THE STATE, SAMUEL K. WILSON, PROSECUTOR, v. THE
INHABITANTS OF THE CITY OF TRENTON.

1. The act (*Pamph. L.* 1892, *p.* 215) organizing boards of public works in certain cities transfers to that board all the power, which before had been in the common council of the city of Trenton, to open and lay out streets. Included in the power thus transferred is the right to continue all unfinished proceedings which had been commenced by the common council at the date of the approval of the act.

2. The power of the board of city assessors to make an assessment is not defective, although their affidavits were taken by the city clerk and not by the clerk of the board of public works.

3. That clause of the city charter which provides that, upon the filing of a refusal to agree to such assessments as shall be made by two-thirds of the persons assessed, the same shall be binding, is not open to the objection that the power so conferred upon property owners to continue or arrest the proceedings is judicial, and, therefore, one with which the legislature cannot invest interested persons.

4. The ability of the legislature, either directly or by delegation of power, to provide for the payment of the cost of the execution of a public enterprise, either by a general tax or a special assessment, is entirely settled. And the legislature can provide that all property, wherever situated, can be specially taxed for the amount which such property is benefited in a manner distinct from and in excess of the amount in which the property of all the public is benefited before re-sorting to the power of general taxation.

On *certiorari.*

This writ brings up proceedings for opening Tyler street, in the city of Trenton, between Hudson street and Chestnut avenue, and the award for damages and the assessment of special benefits attending the proceeding. The proceeding was taken under the charter of the city of Trenton, and its history, as it appears from the record before us, is as follows:

On July 2d, 1889, the common council adopted a resolution directing the city surveyor to make a survey of the most practicable road and to stake out the same. On July 16th common council, by resolution, directed its clerk to give notice of the intention of common council to cause the street to be so laid out. Such notice having been given, an ordinance

was passed on August 20th to open and lay out the said street, which was approved by the mayor on August 31st. On August 30th common council passed a resolution that the street committee should treat with the owners of the land to be taken for the purpose of opening the street. On September 17th a report of the committee was made that the prosecutor and two other owners declined to fix a price. On same day common council adopted a resolution that application be made to the board of city assessors to award damages and assess benefits. On November 1st the board of assessors made its report.

At this stage of the proceedings a writ of *certiorari* brought the proceedings into the Supreme Court, where they were affirmed; but, upon writ of error to the Court of Errors, the resolution of September 17th was set aside, and all the proceedings subsequent thereto, but the preceding steps were affirmed. A judgment of the Supreme Court in conformity with the *remittitur* sent down from the Court of Errors was entered on February 24th, 1892.

On March 23d, 1892, an act known as the Public Works act was approved. This act applied to the city of Trenton, and transfers to the board of public works the power to lay out and open streets. *Pamph. L., p.* 215, § 3. Thereafter, on May 19th, 1892, the board of public works made an application to the board of city assessors to make an award of damages and an assessment for benefits. This step and the subsequent steps in the proceeding are now attacked. A statement of their character can be best made in connection with the several objections urged against their validity.

Argued at November Term, 1892, before Justices DEPUE and REED.

For the prosecutor, *George M. Robeson.*

For the defendant, *William M. Lanning.*

The opinion of the court was delivered by

REED, J.   The first ground upon which the invalidity of
these proceedings is asserted is that the common council, and
not the board of public works, was the proper body to make
the new application to the board of city assessors.   It is ad-
mitted that the legislature had the ability to put this power
into the possession of the board of public works.   The point
made is that the legislature has not done this in the act of
1892; that, by a proper construction of that act, the power to
carry to completion this improvement remained in the common
council.   In support of this position it is pointed out that
the board of city assessors, by section 80 of the charter of
the city of Trenton, can only take action upon an application
in writing made by the common council.   It is, therefore, in-
sisted that there is nothing in the act of 1892 which requires
the board of assessors to act upon any other sanction.

Upon inspection of the last mentioned act, we find that in
section 2 the legislature has, in unmistakable language, trans-
ferred the power which had resided in the common council
respecting the opening of streets over to this new board.   The
language of that section is "that the board of public works
shall be substituted for, and shall be vested with, and shall
perform all the duties and powers of any   *   *   *   common
council or other governing board or authority having power
to lay out, open, grade, alter, vacate or change the line of
streets; that any advertisement required to be made shall be
made by this board and any application or petition for the
doing of any public works shall be addressed to the board."

This is a clear and unambiguous declaration, but, to guard
against any possible misconstruction, it is declared later in
the section what is meant by the use of this language.   It
proceeds as follows: "It being the intention of this act to
entirely supercede the common council and other bodies in the
several departments of streets," &c.

Now, it is perceived that if there is not power in some
body other than the common council to put in motion the
assessable function of the board of city assessors, that function

is extinct, for this section stripped the common council of every shred of authority to call it into action. But the language which lodges this power in the board of public works is no less explicit than the language which divests the common council of it.

The view is pressed, however, that this language of section 2 is modified by the provisions of section 13. The later section, it is insisted, reserves to the common council the control over all proceedings for public improvements already commenced by them, and still unfinished.

The language of this section is as follows: "No suit or proceedings or application for any public improvement shall abate or be discontinued by reason of any provision in this act contained, but shall proceed or continue according to law and not inconsistent with the provisions of this act, proper amendments thereto being made if necessary." In my judgment, this language fortifies rather than modifies the force of section 2. Its meaning is, that these proceedings shall not die because the common council is dispossessed of all power to continue them. They shall continue according to law, not inconsistent with the terms of this act. Not inconsistent, therefore, with the express direction that all power is transferred to the new board. Else why the use of the words " proper amendments thereto being made." If the substitution of the name of the new board for that of the common council when necessary during the progress of the proceeding is not meant, it is difficult to conceive why these words were employed. What amendments would be required by this act if all proceedings then instituted were to proceed without any change?

It is perceived that the effect, according to the act, of any other construction would be this, that over all proceedings in which the first step had been taken, on or before March 22d, the common council would have exclusive control, and such proceedings might be prolonged, as the present one has been, for years. All proceedings, however, begun later than March 22d would be under the exclusive control of the board of

public works.   There would, therefore, exist, for a long time, in separate branches of the municipal government, concurrent power over identical matters of the utmost municipal importance.   It is said in the brief of counsel that the language of section 13 is obscure.   Now it seems incredible, that if the legislature intended to establish this exceptional condition of affairs, they would have attempted it by obscure or ambiguous language.   I do not regard the language as at all ambiguous, and am satisfied that the board of public works had the authority to take up the proceedings at the stage where the common concil had left them.

The next point made against the assessment is, that one of the assessors was irregularly appointed.   It is provided in section 103 of the city charter that whenever a member of the board of city assessors shall be interested in any public improvement either as owner of property to be taken or to be assessed, or in any other way except merely as a taxpayer, the common council shall by a majority vote of all its members elect some disinterested resident in said city to act with the remaining members of the board.   The board of public works, under color of this provision, elected a substitute for one of its members.   That part of the record setting out the appointment, commences as follows :   " Whereas it has been represented to us that Alphonso M. Pycraft, a member of the board of city assessors, is interested in the extension of Tyler Street otherwise than as a taxpayer," &c., " we, by a majority vote of all our members, have elected John N. Lindsay."   Now, the competency of Mr. Lindsay rests upon the incompetency of the person whose place he was elected to fill. That incompetency is not stated in this part of the record. The same condition of the record appeared in the case of *Vreeland* v. *Bayonne,* 25 *Vroom* 488, but this point was passed over undecided, as the record was clearly defective in another particular, namely, in failing to state that the special commissioner possessed the statutory qualifications.   The record here states merely that it had been represented that the superceded assessor was interested.   Represented how ?

Represented by whom? It should have been stated as a fact that the incompetency of Mr. Pycraft existed because of his interest.

But I am inclined to think that this technical defect is remedied by a subsequent recital, for in the report made to the board of public works by the board of assessors, under date of July 5th, 1892, it was recited as a fact that Lindsay had been elected in the place of Pycraft, a member of the board who was disqualified by reason of interest.

I think also that the concluding clause of section 103 is curative. The language of this clause is, "that no report shall be considered illegal in consequence of the incompetency of any person making such report if a majority of the persons making such assessment were competent and disinterested." Now, it appears on the record, that Mr. Lindsay was a resident and was disinterested. The application of the clause in the charter to the present condition of facts, does not encounter the objection which defeated its application in the case of *State, Winans et al, pros.*, v. *Crane, Collector of Cranford Township*, 7 *Vroom* 394. In that case Winans was an interested commissioner, and it was held that the legislature could not make a man judge in his own cause. Stripped of this difficulty, I see no difficulty in giving this clause its natural force. The language seems broad enough to cover the conditions appearing in the present case, and there seems to exist no fundamental restriction upon the power of the legislature to treat in this manner such a predicament.

It is again objected that the oath of the assessors were taken before the city clerk. I find nothing, however, in the act of 1892 which divests the clerk of the city of the right to take the oaths of the assessors as directed by section 81 of the charter.

Another point, which should have been noticed in connection with the first objection, is that the board of works has no means of knowing what has been already done, in any unfinished proceedings, by the common council. But it is obvious that the board of works has the same means of obtaining in-

formation as any succeeding council has.   The record of the proceedings of the council is as open to the inspection of the board of public works as it is to the common council itself.

It is next objected that no notice was given in accordance with section 3.   That section requires that common council shall cause a notice of the proportion of said assessments and costs to be served upon every person.   The infirmity of the notices given is alleged to be that they did not contain a notification that unless two-thirds of said persons should file with the clerk their refusal in writing to agree to such assessments and costs, then the same shall be binding and conclusive on all parties.   It is also objected that the notices failed to state such facts as were essential to afford the parties assessed the data from which they could ascertain and compute the proportional features of the assessment.

In respect to the first proposition, it is sufficient to say that the charter does not require any notification concerning the filing of refusals or the effect thereof.

In regard to the requirement touching the notice of the proportions of assessments, the notices seem to fill the statutory directions.   The notices contain the amount awarded for the land of each owner, and the amount assessed for benefits upon the several lots, upon which it is imposed, with reference to the numbers of such lots as plotted upon the city atlas.   The notices are sufficiently definite to convey all the information which the charter designed should be communicated.

It is next objected that the clause in section 83, which provides that unless two-thirds of the persons assessed shall file their dissent the assessment shall be binding and conclusive is void.   The ground taken is that the question whether private property shall be taken is one the decision of which involves the exercise of judicial functions; that the clause in question puts the decision of this question in the hands of a certain proportion of interested judges; that one-third of the owners of the land assessed can, by a passive assent, fix a lien upon the land of others and impose a special assessment.   It is insisted that the operation of this legislative provision contravenes a

fundamental rule which prohibits the legislature from making a man a judge in his own cause.

I am unable to concede the soundness of the first step in the plausible line of reasoning contained in the brief of counsel upon this point. The power conferred by the clause in question upon those persons upon whose property the assessment is imposed is not a judicial power. It is power of the same kind as is exercised by the legislature when it directly institutes a proceeding to take lands for public purposes and to assess other land for the special benefits arising therefrom. The legislature can put in motion such a proceeding and can arrest it at any stage. It can confer the same power upon municipal legislatures, municipal boards or upon public commissioners. It can put all or a part of the same authority in the hands of all or a portion of the public, or in the hands of all or a portion of those specially interested. The legislature can enact that an improvement of this kind can be initiated by the result of a popular vote or by the motion of a certain proportion of abutting or neighboring property owners. The ten applicants required under the Road act, or the application of a majority of or other fractional part of the owners of property along the line of a street, as is required in many charters, are samples of the exercise of the power in question. The legislature can with equal propriety provide that, when the expenses for the taking of land or the execution of a public improvement shall have been ascertained, that the public or property owners, or a part of the public or property owners, may arrest the further progress of the proceeding.

This power is properly put in the hands of the public or property owners because of their interest. The question is whether the costs exceeds the advantages, and so whether the improvement will be a benefit or detriment. It is, therefore, entirely proper, after the expense of any public improvement has been estimated, to take the sentiment of those upon whom the burden will fall upon the question whether the work shall be carried to completion. In exercising such a power, how-

ever, these persons are in no sense judges, but parties themselves to the proceedings, specially interested in the result.

Nor can I conceive the soundness of the several criticisms which seem to attack the whole system of special assessments contained in the provision of the city charter and illustrated in the present proceeding. It is sufficient to say that the ability of the legislature, either directly or by delegation of power, to provide for the payment of the cost of the execution of a public enterprise either by a general tax or a special assessment is entirely settled. And the legislature can provide that all property wherever situated can be specially taxed for the amount which such property is benefited in a manner distinct from and in excess of the amount in which the property of all the public is benefited before resorting to the power of general taxation.

The last objection which I shall consider is leveled at the manner in which the award for damages and assessment for benefits has been actually made. It is said that the result of the assessors' work shows that it is the result of the adoption of an erroneous principle. I do not perceive that any principle has been adopted, except the general one that the value of each piece of property shall be valued according to its surroundings, and the benefits likely to be conferred upon adjacent property shall be ascertained in the same way. Nor do I know of any rule which requires that the principle upon which assessments or awards are made is to be displayed in the return of the assessors beyond that mentioned. It is asserted that inequality appears from the return and from the explanatory maps and from the testimony offered in evidence. The principal points made against the inequality of the awards is in comparison of award to the prosecutor with the amounts awarded to the Carr estate, to the Stevens property and the Anderson property. It is claimed that a too great depth is allowed to the lots of Hudson and on Chestnut streets in making up the estimate of their value. But the proper depths of lots depends upon a variety of circumstances. It depends upon the frontage of the lots, upon the neighborhood, upon

the streets upon which they front and upon the kinds of houses likely to be built upon the lots. What would be a sufficient depth for a tenement house upon a lot of narrow frontage would be entirely inadequate for an expensively constructed residence upon a broad lot.

I do not see that any mistake was made in the view taken by the assessors in respect to the proper depths of the lots mentioned. It is said that Anderson was awarded an extravagant sum for a strip of land fronting five feet upon Chestnut avenue and running back to a depth of two hundred feet, but it appears that a barn and the side fence had to be removed and the fence rebuilt. Besides, the lot, by reason of its shape, may be injured by the excision of a few feet much more than the value of those feet for building purposes. So with the Carr property, the fences had to be replaced. Without going into further particulars, which would be of no interest except to the parties, it is sufficient to say that after an examination of the maps of the return and explanatory testimony I find no error either in the awards or in the assessments.

There is one feature which I think criticisable. The property of Mr. Wilson is divided by Tyler street. In making the assessment for benefits, by reason of this division, each of the separated parts should have been regarded as a distinct property and an assessment made for benefits to each.

This, however, can be remedied if the prosecutor desires, either by an amended return of the assessors or by action of the Supreme Court directly. With this exception the award and assessments are affirmed.